UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

TRAVIS BRICKEY,

Plaintiff,

vs.

WAYNE STEPHEN WEYLER,
MATTHEW LOWELL LEWIS,
JOSEPH CRAWFORD,
ANDREW WILLIAM MEANS,
CORBEN KENT TELINDE and
MARK JOHNSON

Defendants.
_____

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**
_____

NOW COMES the plaintiff, Travis Brickey, by and through his attorney, Brice A. Tondre, and for his complaint against the defendants named hereinafter states as follows:

**PARTIES**

1. The plaintiff, Travis Brickey ("Mt. Brickey"), is an individual citizen of the state of Colorado residing at 2919 El Torro Road, Grand Junction, Colorado 81503.

2. Defendant Lieutenant Wayne Stephen Weyler ("Lt. Weyler") was at all relevant times a law enforcement officer employed by the Mesa County Sheriff's Department.

3. Defendant Sergeant Matthew Lowell Lewis ("Sgt. Lewis") was at all relevant times a law enforcement officer employed by the Mesa County Sheriff's Office.

4. Defendant Joseph Crawford ("Deputy Crawford") was at all relevant times a law enforcement officer employed by the Mesa County Sheriff's Office.

5. Defendant Andrew Means (Deputy Means") was at all relevant times a law enforcement officer employed by the Mesa County Sheriff's Office.

6. Defendant Corben Kent Telinde ("Deputy Telinde") was at all relevant times a law enforcement officer employed by the Mesa County Sheriff's Office.

7. Defendant Mark Johnson ("Deputy Johnson") was at all relevant times a law enforcement officer employed by the Mesa County Sheriff's Office.

## JURISDICTION

8. This court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331 and 1367 in that one of the causes of action alleged herein arises under of the laws and Constitution of the United States and the other cause of action is so related to the federal cause of action that they form part of the same controversy under Article 3 of the United States Constitution.

## FACTS COMMON TO ALL CLAIMS

9. On August 21, 2010, the Mesa County Sheriff's Office received a call from Ronald Lee Elsberry ("Mr. Elsberry"), 2872 Thistle Drive, Grand Junction, Colorado 81503. Mr. Elsberry reported a domestic assault in progress.

10. Each of the defendants was dispatched to the scene of the reported domestic assault and each was acting under color of state law in responding to the dispatch.

11. Shortly after arriving on the scene, each of the defendants had knowledge or the means of knowledge that the domestic assault was on Lori Clark by her boyfriend, Donald Quint.

Said defendants also had knowledge or the means of knowledge that Mr. Brickey was not involved in the domestic assault.

12.     Deputy Crawford, immediately upon arrival, spoke with Mr. Elsberry, who, if asked, told Deputy Crawford that Mr. Brickey was not involved in the reported incident.

13.     Deputy Telinde arrived at the scene shortly after Deputy Crawford.

14.     Before approaching Mr. Brickey's house Deputies Crawford and Telinde had the duty to ascertain whether Mr. Brickey was involved in the domestic assault. They did not and had no basis for proceeding as if he was involved or as if he were engaged in criminal activity.

15.     Despite their knowledge or means of knowledge that Mr. Brickey was not involved, Deputy Crawford and Deputy Telinde approached Mr. Brickey's house. Mr. Brickey, noticing their approach, exited his front door and instructed them to leave. Deputy Crawford charged toward Mr. Brickey who stepped back inside and shut the front door before Deputy Crawford reached him,

16.     Deputy Crawford told Mr. Brickey that he would kick the door in if he did not open it. When Mr. Brickey did not open the front door, the house was surrounded by the defendants and other officers, all displaying lethal weapons. Deputy Crawford admits that all of this was done without getting a full statement from Mr. Elsberry, who unequivocally informed anyone who asked that Mr. Brickey was not involved in the assault of Lori Clark.

17.     Before Mr. Brickey was assaulted, as hereinafter described, Lori Clark told Deputy Johnson that Mr. Brickey was not involved in the assault. Deputy Johnson, being so informed, had a duty to take steps to stop the seizure which was in progress.

18. Each of the defendants participated in the illegal seizure and aggressively pursued or aided in pursuing efforts to illegally gain entrance to the house of Mr. Brickey.

19. None of the defendants had a warrant or consent to enter nor were there exigent circumstances permitting entry into Mr. Brickey's house. There was not probable cause to arrest Mr. Brickey nor a reasonable suspicion that he was engaged in criminal activity.

20. Knowing they had no right to enter Mr. Brickey's house, defendants attempted to coerce him into granting access. In the process Sgt. Lewis taunted and Lt. Weyler cajoled Mr. Brickey into exposing himself to attack.

21. The defendants and other officers continued to surround Mr. Brickey's house with a show of arms.

22. Lt. Weyler engaged Travis Brickey in conversation. Throughout the conversation, Mr. Brickey persisted in his refusal to allow them to enter his house. Mr. Brickey, extremely fearful that the defendants intended to shoot him, told Lt. Weyler that, if all of the other defendants and other officers would withdraw from the premises and put away their guns, he would allow Lt. Weyler to come in the house and speak with him. Lt. Weyler refused.

23. Despite Mr. Brickey's demand that the defendants leave his yard, they persisted in their presence, brandishing lethal weapons.

24. Throughout the course of the discussions between Lt. Weyler and Mr. Brickey, Mr. Brickey would converse from behind the closed door and would periodically open the door to speak with Lt. Weyler.

25. After observing that Mr. Brickey would periodically open the front door to his

house, Lt. Weyler and Sgt. Lewis formulated a plan to illegally gain entry. They instructed Deputies Crawford and Telinde to secrete themselves beside the door and forcibly enter the premises and arrest Mr. Brickey when he opened the door. Deputy Telinde was instructed to utilize his taser in the process of seizing Mr. Brickey. This order to use force was given at a time when all defendants knew or should have known that Mr. Brickey had not committed a crime and was not a danger to himself or others. Any reasonable law enforcement officer would have known that they had no lawful basis to arrest Mr. Brickey or enter his house and no basis to seize Mr. Brickey or use force in doing so and that there was clearly established constitutional law which prohibited their conduct. None of the defendants took steps to stop the use of the unreasonable and excessive force which had been ongoing and that which followed.

26. None of the defendants had reasonable suspicion that Mr. Brickey had committed a crime or probable cause to arrest him. Additionally, they did not have a warrant, consent or exigent circumstances permitting them to enter his house.

27. At the direction of Lt. Weyler, Deputies Means and Telinde and Sgt. Lewis positioned themselves so as to be out of Mr. Brickey's sight and to be in a position to attack Mr. Brickey if he opened the door.

28. When Mr. Brickey opened his front door, Deputies Telinde and Means and Sgt. Lewis sprung from their positions of hiding and through the doorway which Mr. Brickey was attempting to shut, preventing him from shutting the door, and charged inside the house. In the process Deputy Telinde tasered Mr. Brickey in the neck and forearm causing severe pain and neurological damage. When he fell to the floor as a result of being tasered they jumped on him

forcing his face into the carpet causing severe carpet burns.

29. None of the defendants, all of whom knew or had the means of knowledge that Mr. Brickey was not involved in the domestic assault, took steps necessary to protect Mr. Brickey from the assault upon him by Deputies Telinde and Crawford and Sgt. Lewis.

## FIRST CLAIM FOR RELIEF

30. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 29 above.

31. Each of the defendants was acting under color of state law.

32. Each of the defendants either participated in the illegal seizure of and use of force on Mr. Brickey or failed to prevent the illegal seizure of or use of force on Mr. Brickey, both of which are clearly established violations of the Fourth Amendment to the United States Constitution.

33. Mr. Brickey suffered injuries to his head, neck, arms, face and back as a result of the seizure of him.

34. Even if the defendants had a reasonable suspicion of criminal activity or probable cause to seize Mr. Brickey, which they did not, the force utilized was excessive.

35. Pursuant to 42 U.S.C. § 1983, Mr. Brickey is entitled to recover damages caused by the violation of his rights not to be unreasonably seized and subjected to excessive force in violation of the Fourth Amendment to the United States Constitution. Pursuant to 42 U.S.C. § 1988, Mr. Brickey is entitled to recover his attorney's fees and costs incurred in prosecuting this action.

36. The unreasonable seizure and use of excessive force on Mr. Brickey severely injured him both physically and emotionally and caused him severe humiliation and embarrassment.

37. As a direct and proximate result of the conduct of the defendants herein, Mr. Brickey has suffered physical and emotional injuries, economic and non-economic damages, disfigurement and disability and embarrassment and humiliation.

38. The conduct of the defendants was in reckless and callous indifference to Mr. Brickey's federally protected rights, justifying the award of punitive damages.

## SECOND CLAIM FOR RELIEF

39. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 38 above.

40. The conduct set forth above constitutes an assault and false arrest and/or aiding and abetting an assault and false arrest of the plaintiff by each of the defendants. As a direct and proximate result of the assault and false arrest, plaintiff has suffered physical and emotional injuries, economic and non-economic damages, disfigurement and disability and embarrassment and humiliation.

41. The conduct of each of the defendants was willful and wanton and in reckless and callous indifference to the plaintiff's right to be free from a violation of his rights and the right not to be assaulted and falsely arrested.

WHEREFORE, plaintiff prays that the defendants be cited to appear and answer herein, and that upon trial of this matter plaintiff be awarded judgment for the damages found by the trier

of fact, both compensatory and punitive, that he be awarded his attorney's fees and costs incurred in prosecuting this action and that he be granted such other and further relief as the court deems appropriate in the circumstances.

**PLAINTIFF DEMANDS TRIAL TO A JURY GUARANTEED BY THE CONSTITUTION OF THE UNITED STATES AND PRESERVED BY RULE 38 F.R.C.P.**

/s/ Brice A. Tondre
_____
Brice A. Tondre
215 South Wadsworth Blvd., #500
Lakewood, Colorado 80226
Telephone: 303-296-3300
Facsimile: 303-238-5310
E-mail: briceatondrepc@msn.com

ATTORNEY FOR PLAINTIFF

Address of Plaintiff:

2919 El Torro Road
Grand Junction, Colorado  81503